UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PRINCEWILL DANIELS,

Petitioner,

v.

DAVID WESLING, *et. al*,

Respondents.

No. 1:26-cv-12090-AK

## RESPONDENTS' RESPONSE TO PETITIONER'S HABEAS PETITION

Respondents, by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submit this opposition to Petitioner Leonardo Castro Mendoza ("Petitioner") Petition for Writ of Habeas Corpus ("Petition"). ECF No. 1.

## INTRODUCTION

Petitioner is subject to a final order of removal from the United States and U.S. Immigration and Customs Enforcement ("ICE") detained him as he violated the conditions of his release on an Order of Supervision ("OSUP") and now works to execute his removal. *See* ECF No. 1-1, Exhibit 1, Declaration of Acting Assistant Field Office Director Brian E. Sullivan, ¶¶ 21-31. As such, ICE contends that his detention is supported by the Immigration and Nationality Act ("INA"), does not violate the regulations, and comports with the Constitution.

## BACKGROUND

### A.  Petitioner's Immigration and Criminal History[1].

Petitioner is a native and citizen of Nigeria. Exhibit 1, ¶ 6. On or about March 15, 1987, the legacy Immigration and Naturalization Service ("INS") admitted Petitioner to the United States on a nonimmigrant visitor's visa (B2) at the John F. Kennedy International Airport in New York, New York. *Id*., ¶ 7. He was permitted to remain in the United States for a set period of time. *Id*. On or about March 17, 1999, the Petitioner was placed in removal proceedings before the Los Fresnos Immigration Court in Los Fresnos, Texas. *Id*., ¶ 8. The Petitioner had been charged as removable from the United States under 8 U.S.C. § 1227(a)(1)(B) because he had remained in the United States without authorization beyond the authorized period. *Id*.

On or about September 16, 2002, Petitioner's status was adjusted to that of a lawful permanent resident after the Immigration Judge granted him relief from removal in the form of cancellation of removal for certain nonpermanent residents pursuant to 8 U.S.C. § 1229A(b)(1). *Id*., ¶ 9. This form of relief can only be granted once. *Id*.

On or about November 13, 2008, the DHS issued a second Notice to Appear and properly served it upon the Petitioner. *Id*., ¶ 10. Thereafter, Petitioner was placed in removal proceedings for a second time. *Id*. On or about February 9, 2009, the DHS filed a Form I-261, Additional Charges of Inadmissibility/Deportability, charging the Petitioner as removable from the United States pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) because the Petitioner had been convicted of a violation of any law or regulation in the United States relating to a controlled substance. *Id*., ¶ 11.

---

[1] Respondents note that given Petitioner's lengthy criminal history, ICE provided the Interstate Identification Index. Exhibit 2. A motion to file Exhibit 2 under seal is pending before the Court and thus Exhibit 2 has not yet been filed.

Specifically, Petitioner had been convicted twice of criminal possession of a controlled substance (to wit: marijuana and cocaine) in the Framingham District Court at Framingham, Massachusetts and the Concord District Court at Concord Massachusetts in 2008. *Id.*

On or about February 2, 2009, the Immigration Judge at the Los Fresnos Immigration Court ordered Petitioner removed and denied his application for relief from removal. *Id.*, ¶ 12. Petitioner reserved appeal. *Id.* On or about September 14, 2009, Petitioner appealed the denial of relief from removal to the Board of Immigration Appeals ("BIA"). *Id.*, ¶ 13. On or about May 6, 2010, the BIA sustained the Petitioner's appeal and remanded the case to the Immigration Judge. *Id.*, ¶ 14. On or about May 27, 2010, in the remanded removal proceedings, the Immigration Judge ordered Petitioner removed to Nigeria and also deferred the removal order pursuant to the Convention Against Torture. *Id.*, ¶ 15. Both parties waived appeal of this decision. The Immigration Judge's order is final. *Id.*

On or about June 4, 2010, the Petitioner was released on a Form I-220B, Order of Supervision. *Id.*, ¶ 16. The order of supervision required Petitioner to not commit any crimes while released. *Id.* On or about May 31, 2012, ICE encountered the Petitioner at Waltham District Court (MA), after he was released from state custody for pending breaking and entering with intent to commit a felony, assault and battery, malicious destruction of property over $250, and intimidation. *Id.*, ¶ 17. ICE confirmed Petitioner is currently a final order of removal who is currently released from ICE custody on an OSUP which ordered Petitioner not to commit new crimes. *Id.* On or about that same day, ICE arrested Petitioner for violation of his OSUP conditions and transferred him to Plymouth. *Id.*, ¶ 18.

On or about June 7, 2012, the Petitioner was released on a Form I-220B, Order of Supervision. *Id*., ¶ 19. The 2012 order of supervision again required Petitioner to not commit any crimes while released. *Id*. The order also required Petitioner to report on June 27, 2012 in person.[2] *Id*. From the years 2012 until 2026, the Petitioner has repeatedly violated the terms of his OSUP release, by being arrested and also convicted of multiple state criminal charges.[3] *Id*., ¶ 20. ICE during that timeframe issued multiple letters ordering the Petitioner to report in person, but the letters came back as undeliverable and the Petitioner never reported. *Id*.

On or about March 30, 2026, ICE officers encountered Petitioner at the Middlesex House of Corrections and Jail, when the local authorities turned him over into ICE custody after he posted bail in his pending criminal proceedings. *Id*., ¶ 21. ICE officers took Petitioner into custody pursuant to a Form I-205, Warrant of Removal/Deportation. *Id*. It was determined that Petitioner had violated the terms of his 2012 Order of Supervision and that he had a history of violating the terms of the release, such that his detention pending removal to a third country is necessary. *Id*.; *see also* Exhibit 2.

On or about April 6, 2026, ICE issued a Notice of Revocation of Release ("First Notice"), which advised Petitioner that his release was revoked pursuant to 8 C.F.R. § 241.4(l) because he

---

[2] Petitioner states that he checked in and was told by an ICE officer he did no longer had to check in. *See* ECF No. 4 at 4. However, the OSUP does not show a handwritten notation of Petitioner's check-in with ICE on or about June 27, 2012. *See* ECF No. 1-1 at 5.

[3] Between his release in June 2012 and his most recent encounter with ICE, law enforcement arrested Petitioner in October 2012, April 2012, October 2013, March 2014, June 2014, July 2014, March 2016, April 2017, September 2017, November 2016, December 2018, January 2019, December 2019, September 2020, July 2021, and most recently an arrest on March 21, 2025 by Framingham Police Department for trafficking cocaine. *See* Exhibit 2

violated a condition of his release when he was arrested on March 21, 2025 by the Framingham, Massachusetts police department for trafficking a controlled substance, to wit: cocaine 36+ grams. *Id*., ¶ 22. On or about the same date, ICE issued a second Notice of Revocation of Release ("Second Notice"), which advised Petitioner that his release was revoked pursuant to 8 C.F.R. § 241.4(l) because his conduct indicates that release is no longer appropriate. *Id*., ¶ 23. Specifically, ICE indicated in the notice that he was arrested on March 21, 2025 by the Framingham, Massachusetts police department for trafficking a controlled substance, to wit: cocaine 36+ grams, and on July 13, 2025, he was arraigned in the Middlesex Superior Court for trafficking a controlled substance, cocaine. *Id*.

On or about April 7, 2026, the First Notice was served on Petitioner. *Id*., ¶ 24. Shortly thereafter on the same day, Petitioner was afforded an opportunity to respond to the First Notice during an informal interview. *Id*. Petitioner provided a written statement on the informal interview form. *Id*. He did not provide any written documents. *Id*.

On or about April 8, 2026, after ERO discovered [*sic*] the error, an ICE officer served the Second Notice on Petitioner. *Id*., ¶ 25. On or about April 10, 2026, the Petitioner was afforded another opportunity to respond to the Second Notice during an informal interview. *Id*., ¶ 26. Petitioner provided a thorough written statement. *Id*. He did not provide any written documents. *Id*.

On or about April 13, 2026, an ICE officer referred this case to Enforcement and Removal Operations Headquarters Removal and International Operations ("HQ-RIO") for assistance regarding third country removal. *Id*., ¶ 27. On or about April 24, 2026, HQ-RIO acknowledged

receipt of the third country removal referral. *Id*., ¶ 28. At this time, the referral remains pending with HQ-RIO for future charter consideration for third country removal. *Id*.

On or about May 14, 2026, an ICE officer served Petitioner with a Notice to Alien of File Custody Review. *Id*., ¶ 29; *see also* Exhibit 3, POCR Notice. This notice indicated that ICE would review his custody status on or about June 18, 2026. *Id*. ICE continues to track Petitioner's case for post-order custody reviews ("POCR") as required by the regulations. *Id*., ¶ 30. Petitioner remains in ICE custody, pending enforcement of the removal order and removal to a country other than Nigeria. *Id*., ¶ 31.

### B.  Petitioner's Habeas Petition.

Petitioner filed the Petition on May 14, 2026. ECF No. 1. Petitioner claims ICE's detention of Petitioner violates the statute, regulations, and the Constitution. *See* ECF No. 1. Petitioner asks this Court to order his release from ICE custody on the prior OSUP. *See* ECF No. 4 at 12.

### STANDARD OF REVIEW

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allopath Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted).  Title 28 U.S.C. § 2241 provides district courts with jurisdiction to hear federal habeas petitions unless Congress had separately stripped the court of jurisdiction to hear the claim.

To warrant a grant of writ of habeas corpus, the burden is on the petitioner to prove that his custody is in violation of the Constitution, laws, or treaties of the United States.  *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing

deprivation of rights leading to an unlawful detention is on the petitioner."); *Farrell v. Lanagan,* 166 F.2d 845, 847 (1st Cir. 1948).

## ARGUMENT

### A.   ICE is authorized to detain Petitioner.

#### 1.   Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231.

ICE's detention authority stems from 8 U.S.C. § 1231, which provides for the detention and removal of aliens with final orders of removal. Section 1231(a)(1)(A) directs immigration authorities to remove an individual with a final order of removal within a period of 90 days; this is known as the "removal period." During the removal period, section 1231(a)(2) commands that ICE "shall detain" the alien.

If, however, the removal period has expired, ICE can either release the alien pursuant to an Order of Supervision as directed by Section 1231(a)(3) or may continue detention under Section 1231(a)(6). Per Section 1231(a)(6), ICE may continue detention beyond the removal period for three categories of individuals:

- Those who are inadmissible to the United States pursuant to 8 U.S.C. § 1182;
- Those who are subject to certain grounds of removability from the United States pursuant to 8 U.S.C. § 1227(a)(2) or (a)(4); or
- Those whom immigration authorities have determined to be a risk to the community or "unlikely to comply with the order of removal."

*See Johnson v. Guzman Chavez*, 594 U.S. 523, 528-29 (2021). 8 U.S.C. § 1231(a)(6) allows ICE to detain Petitioner because he is inadmissible under 8 U.S.C. § 1227(a)(2); as an Immigration Judge found him removable for a controlled substance violation under 8 U.S.C. § 1227(a)(2)(B)(i). *See* Exhibit 2. As such, under the plain language of the statute ICE had authority to detain Petitioner to effectuate his removal. *See Quezada-Martinez v. Moniz*, 722 F. Supp. 3d 7, 11 (D. Mass. 2024) (Agreeing that petitioner's "detention is authorized by § 1231(a)(6)" as such "finding

comports with the text of the statute as well as with recent Supreme Court precedent."[4] Petitioner does not dispute that he is subject to 8 U.S.C. § 1227(a)(2)(B)(i), nor does he clearly claim a violation of Section 1231. *See* ECF No. 1, ECF No. 4. As such, ICE continues to have statutory authority to detain Petitioner to effectuate his removal order, albeit to a country other than Nigeria, from the United States. Accordingly, Petitioner is not entitled to release.

### 2.    Petitioner's detention comports with the regulations.

Petitioner's OSUP Notice of Revocation of Release indicates that ICE revoked his release under 8 C.F.R. § 241.4, indicating that release was no longer appropriate and specifying that on or about March 21, 2025, Petitioner was arrested for trafficking a controlled substance on July 13, 2025, Petitioner was arraigned on that charge. *See* ECF No. 1-1 at 1; *see also* Exhibit 1, ¶ 23; Exhibit 2 at 22. This regulation specifies a process for detaining people beyond the removal period and for releasing them thereafter.  8 C.F.R. § 241.4(d)–(k).  It also specifies a process for returning a person, once released, back to detention.  8 C.F.R. § 241.4(*l*). *Alam v. Nielsen*, 312 F. Supp. 3d 574, 582 (S.D. Tex. 2018). 8 C.F.R. § 241.4(*l*)(1) states:

> Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

---

[4] The Supreme Court in *Johnson v. Arteaga-Martinez* answered the question of "whether the text of § 1231(a)(6) requires the Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." 596 U.S. 573, 574 (2022). It responded definitively, holding that section 1231(a)(6)'s plain text, which "says nothing about bond hearings before immigration judges or burdens of proof" [and] "directs that we answer this question in the negative." *Id.* at 581.

8 C.F.R. § 241.4(*l*)(1). Petitioner's OSUP clearly states that he cannot commit any crimes while released, which he violated at least fifteen times, before ICE revoked the OSUP for the March 2025 arrest and subsequent arraignment.[5] *See* ECF No. 1-1; *see also* Exhibit 1, ¶ 23, Exhibit 2 at 22. Throughout this time, Petitioner has been arrested for extremely serious offenses, the litany of which is contained in Exhibit 2.

When ICE revokes release of an individual under 8 C.F.R. § 241.4(*l*), ICE must conduct an "informal interview" to advise the individual of the basis for revocation and must also serve the individual with a written notice of revocation. *See Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 226 (D. Mass. 2025). ICE initially revoked the OSUP on April 6, 2026, and afforded him two informal interviews on April 7, 2026, and April, 10, 2026. Exhibit 1, ¶¶ 22-26. Petitioner cannot claim that he was not served the OSUP revocation notice or not afforded the informal interview, but rather, takes issue with when they occurred after he was detained. *See* ECF No. 1.

Notably, the regulation is silent as to an exact timeframe that the initial informal interview after return to custody must occur. *See* 8 C.F.R. § 241.4(l)(1). When addressing whether the revocation of the OSUP and informal interview comport with the regulations, this Court and others within this District previously took issue with conclusory language in the revocation notice and that such language would not allow the alien to meaningfully respond at the informal interview. *See de Rodriquez v. Hyde*, No. 25-CV-13210-AK, 2026 WL 220416, at *3 (D. Mass. Jan. 28,

---

[5] Petitioner questions whether he was even subject to an OSUP after his check-in in 2012, but yet grounds his Petition in the revocation of an OSUP regulations. If Petitioner was not subject to an OSUP, then it stands to reason that these regulations do not apply, and the Petition should be dismissed. However, as ICE's position is that Petitioner was subject to an OSUP which was properly revoked, as he violated the conditions therein. Also, Petitioner's reliance on "when revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner" comes from 8 C.F.R. § 241.4(l)(2) which is not the subsection under which ICE revoked his OSUP.

2026) (citing to *Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 226 (D. Mass. 2025). Petitioner was well aware of the specified reason that ICE revoked his OSUP, based on violations of the conditions therein, namely his arrest and arraignment for trafficking cocaine. *See* ECF No. 1-1; *see also* Exhibit 1, ¶¶ 21-24. On the two occasions ICE conducted the informal interview, Petitioner provided written statements, but he failed to provide any evidence (verbal or documentary) that he had not violated the conditions of his release. *See* ECF No. 1-1; *see also* Exhibit 1, ¶¶ 24, 26. Nor could he, as ICE officers encountered him at the Middlesex House of Corrections and Jail, when the local authorities turned him over into ICE custody after he posted bail in his pending criminal proceedings. Exhibit 1, ¶ 21. Even with the slight delay in the revocation notice and informal interview, Respondents aver that Petitioner was afforded a meaningful opportunity (on two occasions) to contest that his recent arrest and arraignment for this serious offense did not constitute a violation of his OSUP conditions.

Additionally, the Field Office Director, David T. Wesling, was authorized to revoke Petitioner's OSUP. 8 C.F.R. § 241.4 refers to the authority of official to revoke using the former Immigration and Naturalization position titles. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 160 (W.D.N.Y. 2025) (citing *Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017). When the Homeland Security Act transferred functions to DHS, "statutory references to the authority that was formerly responsible for those functions will be deemed to refer to DHS." *Id.*, *citing Ali*, 524 F.3d at 150 (citing 6 U.S.C. § 557). The ICE regulation, 8 C.F.R. § 1.2, states "Commissioner means the Commissioner of the Immigration and Naturalization Service prior to March 1, 2003. Unless otherwise specified, references after that date mean . . . the Director of U.S. Immigration and Customs Enforcement." The same regulation provides that "[o]n or after March 1, 2003, pursuant to delegation from the Secretary of Homeland Security . . . the terms mean . . .field office

director." *See id*. Thus, under section 241.4(l)(2), the Field Office Director, David T. Wesling, properly revoked Petitioner's OSUP. *See Ceesay*, 781 F. Supp. at 161.

In the event that this Court finds the revocation of Petitioner's OSUP falls under 8 C.F.R. § 241.13, subsection (i)(1) also allows revocation of release for violations of the conditions of the OSUP and does not require a showing of changed circumstances. *Compare* 8 C.F.R. § 241.13(i)(1) *with* 8 C.F.R. § 241.13(i)(2). Moreover, unlike the language of 8 C.F.R. § 241.13(i)(2), which many courts within this District have recently addressed, 8 C.F.R. § 241.13(i)(1) **<u>does not contain any language</u>** that the agency must determine whether there is a significant likelihood of removal in the reasonably foreseeable future. In fact, 8 C.F.R. § 241.13(i)(1) explicitly states that the alien may be continued in detention for an additional six months in order to effectuate the alien's removal. As such, this Court's analysis in *Huynh v. Wesling*, 2026 WL 183467, and the analysis of other sessions, is not applicable to this Petitioner's case and he may continue to be detained throughout these six months to effectuate his removal.

Also, if ICE determines revocation remains appropriate after conducting the informal interview, then ICE will provide notice to the individual of a further custody review that "will ordinarily be expected to occur within approximately three months after release is revoked." 8 C.F.R. § 241.4(l)(3). On May 14, 2026, ICE served Petitioner a Notice to Alien of File Custody Review to be conducted on or about June 18, 2026, in compliance with the aforementioned regulation. *See* Exhibit 3, POCR Notice. Petitioner may, once again, submit documentary evidence to ICE to make his case for release.

As another session of this Court aptly stated:

> This is not a case where ICE's compliance with 8 C.F.R. § 241.4 would have resulted in [the alien's] release. That is so because, even assuming that ICE's possible failure to comply with certain regulations violated [the alien's] procedural due-process rights, that failure does not affect the validity of the underlying final order of removal. And that order is the legal authority for [the alien's] pending removal.

11

*Quichimbo Sumba v. Noem*, 2026 WL 357649, at *2 (D. Mass. Feb. 9, 2026). As discussed below, Petitioner has not met his burden to show that removal is not significantly likely to occur in the reasonably foreseeable future, and this Court should find Petitioner has not shown his detention violates the pertinent regulations.

### 3.    Petitioner's detention does not offend the Constitution.

Petitioner claims that his detention violates the Fifth Amendment's Due Process Clause because ICE violated the regulations when it revoked his OSUP. *See* ECF No. 1, ¶¶ 36-48. As set forth *supra*, ICE maintains it followed the relevant regulations when revoking Petitioner's OSUP and may continue to detain him for six months to effectuate his removal.

Also, ICE avers Petitioner's detention continues to serve the purpose of Section 1231. As explained by the Supreme Court, when evaluating "reasonableness," the touchstone is whether an alien's detention continues to serve "the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. The First Circuit has also recognized that the "execution of removal orders is a legitimate governmental interest which detention may facilitate." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 32 (1st Cir. 2021) (cleaned up). *See also Aguilar v. U.S. Immigration and Customs Enforcement*, 510 F.3d 1, 22 (1st Cir. 2007) (Recognizing the government's "legitimate interest in effectuating detentions pending the removal of persons illegally in the country."). As recently stated by another session of this Court, "detention under § 1231(a)(6) is presumed to be constitutionally valid for a period of up to six months." *Hernandez Martinez*, 2025 WL 3719841, at *2 (Because petitioner "has been detained for less than two weeks … [s]uch relatively brief detention does not violate his right to due process under the United States Constitution."). *See also Thai,* 788 F. Supp. at 61 ("[s]ome period of detention

12

prior to deportation is constitutionally valid."); *D'Ambrosio,* 793 F. Supp. 3d at 278 n.8 (Explaining that "petitioner has been detained for less than six months, rendering his detention under § 1231 presumptively valid at this time."); *Rodriguez-Guardado*, 271 F. Supp. 3d at 335 ("as petition has been detained for approximately two months as of this date, the length of his detention does not offend due process.").

To set forth a Constitutional violation for section 1231 detention, an individual must satisfy the *Zadvydas* test. 533 U.S. at 701. In *Zadvydas*, the Court held that post-final-removal-order detention for six months is "presumptively reasonable." *Id.* at 701. Beyond six months, the Supreme Court explained, an individual could file a habeas petition seeking release. *Id.* at 700-01. In such petition, the individual must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701. Only after the alien makes this initial showing is the government required to "respond with evidence sufficient to rebut that showing." *Id.*

At this time, Petitioner's detention since March 30, 2026, remains "presumptively reasonable" and his due process claim is premature. *See id*. Even if six months passed and Petitioner showed good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, ICE is actively seeking a third country to remove him to. *See* Exhibit 1, ¶¶ 27-30.

Should Petitioner challenge ICE's ability to remove him to a third country, other District Courts have denied petitions challenging the constitutionality of detention when removal to a third country is pursued by ICE. *See e.g.*, *Douglas v. Baker,* No. 25-CV-2243-ABA, 2025 WL 2687354, at *4 (D. Md. Sept. 19, 2025) ("[a]t least at this time, the Court accepts the proposition that there is a diplomatic effort underway to effectuate Mr. Douglas's removal to a country other than

Jamaica, and specifically to the U.K., and concludes that that evidence is sufficient to rebut Petitioner's showing." ); *Cruz Medina v. Noem*, —— F. Supp. 3d. ——, Case No. 25-CV-1768-ABA, 2025 WL 2306274, at *11 (D. Md. Aug. 11, 2025) (Finding ICE rebut petitioner's showing due to representation that ICE had presented his case to a third-country (El Salvador) for review and that such government was reviewing his case for issuance of a travel document.); *Odiase v. Oddo*, No. 3:25-CV-206, 2025 WL 2166673, at *4 (W.D. Pa. July 31, 2025) (concluding that petitioner had failed to meet her initial burden under *Zadvydas* because "[ICE] has stated that Petitioner's removal from the United States is imminent once a third-country removal opportunity is secured" and because ICE was exploring removal to multiple third countries).[6]

Petitioner also remains able to challenge his detention and seek release through the regulatory provisions that apply for individuals detained with final orders of removal if ICE is unable to effectuate removal to a third country in the reasonably foreseeable future. Courts routinely conclude that such regulations are permissible to protect individual's Constitutional rights while detained. *See e.g., Thai,* 788 F. Supp. 3d at 61 ("The constitutional validity of § 241.4 has not been disputed and, in fact, other courts have routinely denied due process challenges where ICE has met its regulatory obligations."); *Moses v. Lynch*, No. 15-cv-4168, 2016 WL 2636352, at *4 (D. Minn. Apr. 12, 2016) ("When immigration officials reach continued-custody decisions for aliens who have been ordered removed according to the custody-review procedures established in

---

[6] Petitioner's brief detention is distinguishable from Judge Burroughs' decision in *Siguenza*, 2025 WL 2734704 at*3, where that alien was detained for a longer period of time (past six months) and no third country was ever identified. Additionally, ICE did not revoke the alien's OSUP in *Siguenza* because of a violation of conditions of release, which as discussed above allows for six months of detention, but rather because ICE indicated it was ready to remove that alien. *See Siguenza,* 2025 WL 2734704, at *2 f.n. 1.

14

the Code of Federal Regulations, such aliens receive the process that is constitutionally required.");

*Portillo v. Decker*, No. 21 CIV. 9506 (PAE), 2022 WL 826941, at *6 (S.D.N.Y. Mar. 18, 2022)

(Collecting cases supporting conclusion that the POCR framework has routinely been deemed

constitutional and noting that petitioner had not "cite[d] legal authority in support of his

generalized laments about the administrative process.").

Based on the foregoing, Petitioner's detention is fully permissible and does not violate the

Constitution.

## **CONCLUSION**

For the above reasons, the Petition should be denied.

Dated: May 21, 2026,                                Respectfully submitted,

                                                    LEAH B. FOLEY
                                                    United States Attorney

                                                    By:     */s/ Erica McMahon*
                                                    Special Assistant United States Attorney
                                                    United States Attorney's Office
                                                    1 Courthouse Way, Suite 9200
                                                    Boston, MA 02210
                                                    Tel.: 617-748-3271
                                                    Email: Erica.McMahon@usdoj.gov

## **CERTIFICATE OF SERVICE**

I, Erica McMahon, Special Assistant United States Attorney, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Paper copies will be sent to those indicated as non-registered participants.

Dated: May 21, 2026                    By:     */s/ Erica McMahon*
                                                Special Assistant United States Attorney